ORIGINAL FILED

JUN 2 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## MOTION, PURSUANT TO SECTION 2255 OF TITLE 28
## UNITED STATES CODE

### ATTACKING A SENTENCE IMPOSED BY THAT COURT

RMW

UNITED STATES OF AMERICA

CV 08    3072

VS.

**E-filing**

CASE NO.
(To be supplied by the
Clerk of the District Court)

THIN EDWARD SOU

(name of movant)
(Full name under which you
were convicted)

---

### INSTRUCTIONS-READ CAREFULLY

In order for this motion to receive consideration by the District Court, it shall be in writing (legibly handwritten or typewritten) by the Movant, under penalty of perjury, and it shall set forth in concise form the answers to each applicable question. If necessary, Movant may finish his answer to a particular question on the reverse side of the page or on an additional blank page. Movant shall make it clear to which question any such continued answer refers.

Since every motion under Section 2255 of Title 28, United States Code, must be made under penalty of perjury, any false statement of a material fact therein may serve as the basis of prosecutions and conviction for perjury. Movant should therefore exercise care to assure that all answers are true and correct.

If the motion is made in forma pauperis, it shall include an affidavit (page 6 of this form) setting forth information which establishes that the Movant will be unable to pay the fees and costs of the 2255 proceedings. When the form is completed, the original and 2 copies shall be mailed to

the Clerk of the District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102.

1. Place of detention F.C.I. ELKTON, P.O. BOX 10, Lisbon, OH 44432

2. Name and location of Court which, and name of judge who, imposed sentence _____
   Northern District of California, San Jose Division, Honorable Ronald M. Whyte

3. The indictment number or numbers (if known) upon which the offense or offenses for which sentence was imposed.:

   (a) _____
   (b) _____
   (c) _____

4. The date upon which sentence was imposed and the terms of the sentence:

   (a) October 24, 2005, term 240-month sentence _____
   (b) _____
   (c) _____

5. Check whether a finding of guilty was made:

   (a) after a plea of guilty _____
   (b) after a plea of not guilty  XX _____
   (c) After a plea of nolo contenders _____

6. If you were found guilty after a plea of not guilty, check whether that finding was made by

   (a) a jury                     _____ XXX _____
   (b) a judge without a jury     _____

7. Did you appeal from the judgment of conviction or the imposition of sentence?  Yes

8. If you answered "yes" to question 7, list

   (a) the name of each court to which you appealed:

   | I   | The United States Court of Appeals for the Ninth Circuit |
   | 11  | Ninth Circuit, Petition for Panel Rehearing |
   | 111 | Supreme Court of the United States |

   (b) the result of each such court to which you appealed:

2

| I | Ninth Circuit--affirmed |
| 11 | Ninth Circuit Petition--denied |
| 111 | United States Supreme Court--denied |

(c) the date of each such result:

| I | January 8, 2007 |
| 11 | March 1, 2007 |
| 111 | June 25, 2007 |

(d) If known, citations of any written opinions or orders entered pursuant to such results:

I
11
111

**9.** State concisely the grounds on which you base your allegation that the sentence which was imposed on you is invalid.

(a) Please see attachment 3A

(b)

(c)

10. State concisely and in the same order the facts which support each of the grounds set out in (9):

(a) Please see attachment 3A, 3B

(b)

(c)

3

INSERTS FOR  HABEAS PETITION

GROUNDS

9(a)  Counsel was ineffective for failing to advise Mr. Sou of a
      ten-year plea offer.

9(b)  Counsel was ineffective for insufficiently communicating the
      Government's plea offer.  Counsel deprived Petitioner of both
      the right to make a reasonably informed decision on the advan-
      tage of pleading guilty and the opportunity to receive a three-
      point reduction.

9(c)  Counsel was ineffective when he failed to advice his client to
      plea guilty.

9(d)  Counsel was ineffective for failing to adequately investigate
      the relevant sentencing laws.

9(e)  Counsel was ineffective for failing to convey the Government's
      plea offer as it relates to the superseding indictment.

FACTS

10(a)  During the early stages of the proceedings, counsel failed to
       inform Mr. Sou of a ten year plea offer by the Government, Mr.
       Sou would have accepted had he known of its existence.

10(b)  During the initial stages of this criminal proceeding, Mr. Sou
       explicitly expressed to Counsel Ramsaur a preference to plead
       guilty in exchange for a reasonable sentence.  Mr. Sou indicated
       his contentment with 10 years, but only as a desirable sentence
       that was open for negotiation.  Subsequently, counsel communi-
       cated to Mr. Sou in a very brief manner, that the Government
       was offering a three-point reduction in exchange for pleading

                          ATTACHMENT 3A

guilty.   Counsel did not discuss any of the specific terms of the Government's plea offer or Mr. Sou's sentence exposure. In all actuality, the Government's plea offer was communicated by Counsel Ramsaur in an insufficient manner.

10(c)   When counsel was first informed of the 10 year plea offer, it was incumbent upon him to immediately inform Mr. Sou of the plea offer and advise him of the advantage of the plea and its significance.

10(d)   Counsel was unable to inform his client of the approximate sentence he was facing if he elected to go to trial and lost.

10(e)   The Government has indicated it its declaration that a plea offer was made available after the return of the superseding indictment.   Counsel Ramsaur failed to communicate this plea offer to Mr. Sou.   It was not until the Government submitted its declaration that Mr. Sou became aware of this plea offer, offer of reduction for acceptance of responsibility.

Mr. Sou respectfully requests the Court hold an evidentiary hearing in this matter to allow him to prove the truth of his allegations.

ATTACHMENT 3B

_____

_____

11. Have you previously filed petitions for habeas corpus motions under section 2255 of Title 28, United States Code, or any other applications, petitions or motions with respect to this conviction? __NO_____

12. If you answered "yes" to (11), list with respect to each petition, motion or application

      (a) the specific nature thereof:

        I      _____

       11    _____

     111   _____

      (b) the name and location of the court in which each was filed:

        I      _____

       11    _____

     111   _____

      (c) the disposition thereof:

        I      _____

       11    _____

     111   _____

      (d) the date of each disposition

     . I     _____

      11    _____

     111   _____

      (e) if known, citations of any written opinions or orders entered pursuant to each such disposition:

        I      _____

       11    _____

     111   _____

13. Has any ground set forth in (9) been previously presented to this or any other federal court by way of petition for habeas corpus, motion under section 2255 of Title 28, United States Code, or any other petition, motion or application? __NO_____

14. If you answered "yes" to (13), identify

      (a) which grounds have been previously presented:

4

I       _____
11      _____
111     _____

(b) the proceedings in which each ground was raised:

I       _____
11      _____
111     _____

15. Were you represented by an attorney at any time during the course of

    (a) your arraignment and plea?      YES

    (b) your trial, if any?      YES

    (c) your sentencing?      YES

    (d) your appeal, if any, from the judgment of conviction of the imposition of sentence?      YES

    (e) preparation, presentation or consideration of any petitions, motions or applications with respect to this conviction, which you filed?      YES

16. If you answered "yes" to one or more parts of (15), list

    (a) the name and address of each attorney who represented you:

I    James W. Ramsaur, 440 Grand Ave., Suite 200, Oakland, CA 94610
11    Alfredo M. Morales, 336 N. Second St., San Jose, CA 95112
111    Eric R. Krebs, 44 Montgomery St., Suite 3585, San Francisco, CA 94104

WHEREFORE, movant prays that the Court grant movant relief to which he may be

entitled in this proceeding.

Signed under penalty of perjury    THIN EDWARD SOU      at

06/18/08
Date                            Signature of Movant

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

UNITED STATES OF AMERICA,           :
               Respondent   :
                            :    Case No. __03CR20110(RMW)__

        v.                  :

                            :    MEMORANDUM IN SUPPORT OF
THIN EDWARD SOU,                    :    MOTION TO VACATE, SET ASIDE
                            :    OR CORRECT A SENTENCE UNDER
            Movant    :    28 U.S.C. § 2255
                            :

## STATEMENT OF THE CASE

Movant, THIN EDWARD SOU (Mr. Sou), was indicted in counts 7 and 8 of an eight-count indictment, on July 7, 2003. Thereafter, on September 1, 2004, the indictment was superceded charging Mr. Sou with violating counts 1 and 3 of this indictment. Count 1, charged him with conspiracy to distribute 50 grams or more of Methamphetamine, in violation of 21 U.S.C. § 846. Count 3, charged him with distribution of 50 grams or more of Methamphetamine, in violation of 21 U.S.C. § 841.

Trial commenced on October 26, 2004, and on November 18, 2004, the jury found Mr. Sou guilty of both count 1, and 3.

On October 24, 2005, Mr. Sou was sentenced to 240 months of imprisonment on count 1, and 240 months of imprisonment on count 3, with all counts to be served concurrently, with 5 years of supervised release. Furthermore, counts 7 and 8 were dismissed on the Government's motion.

A timely notice of appeal was filed and on March 12, 2007, the Ninth Circuit Court of Appeals affirmed the ruling of the District Court.

1

A timely petition for certiorari was filed in the United States Supreme Court and on June 25, 2007, certiorari was denied.

## STATEMENT OF THE FACTS

To bring a proper claim under § 2255, a defendant must show cause why the matter was not previously raised at trial or on direct appeal, and must show that he was prejudiced by this failure to previously raise the claim. **United States v Frady,** 456 US 152, 170 (1982). However a defendant may establish cause by demonstrating that he received ineffective assistance of counsel. **Murray v Carrier,** 477 US 478,488 (1986) and **Coleman v Thompson,** 501 US 722,750 (1991).

The Supreme Court has set forth the appropriate standard of review for claims of ineffective assistance of counsel in **Strickland v Washington,** 466 US 668,687 (1984), which requires that a defendant show: (1) that his counsel's performance was deficient under prevailing professional standards and (2) that, because of his counsel's deficient performance, the defendant was prejudiced in a way which denied him the right to a fair and reliable trial, also see **Lockhart v Fretwell,** 506 US 364,(1993). Furthermore an attorney renders ineffeftive assistance of counsel on appeal when the attorney fails to raise a clearly meritorious appellate issue. **Evitts v Lucey,** 484 US 387,394 (1985).

The correct standard for determining whether an error is harmless in a post-conviction collateral attack matter is the "harmless error" test set forth in **Brecht v Abrahamson,** 507 US 619,637 (1993). However once prejudice has been determined "it is unnecessary to add a separate layer of harmless error analysis to an evaluation of whether a petitioner in a habeas case has

2

presented a constitutionally significant claim for ineffective
assistance of counsel" since that analysis has already been performed
in the prejudice determination. **Hill v Lockhart**, 28 F3d 832,839
(8th Cir. 1994).

### GROUND ONE

Counsel was ineffective for failing to advise Mr. Sou of
a ten year plea offer.

### SUMMARY OF THE ARGUMENT

During the early stages of the proceedings counsel failed
to inform Mr. Sou of a ten year plea offer by the Government
Mr. Sou would have accepted had he known of its existence.

### ARGUMENT

It is well settled that it is within the Government's discretion
whether or not to offer a plea bargain to a criminal defendant.
Although a defendant has no constitutional right to any plea
bargain, once a plea is offered it materially changes the nature
of the proceedings by presenting a choice of divergent roads:
A defendant must elect whether to go on defending himself or
to resign himself to a public acknowledgment of guilt in exchange
for a lesser sentence.  **United States v Timmins**, 301 F3d 974,981
(9th Cir. 2002).  In this instance due to counsel's ineffectiveness
Mr. Sou, was denied the right to plea guilty in exchange for
a lesser sentence.

It is written in stone that the Sixth Amendment guarantees
a criminal defendant the constitutional right to be represented
by counsel at all critical stages of the prosecution, including
the plea proceedings.  **United States v Akins**, 276 F3d 1141, 1146
(9th Cir. 2002), in accord **Turner v Calderon**, 281 F3d 851,879

3

(9th Cir. 2002).

The Ninth Circuit has held that "the decision to reject a plea bargain offer and plea not guilty is a critical stage at which the right to effective assistance of counsel attaches". **United States v Akins,** 276 F3d 1141 , 1146 (9th Cir. 2002), in accord **Turner** id 281 F3d at 879.  Thus **Strickland's** two-prong test applies to ineffectiveness claims arrising from the plea process.  **Hill v Lockhart,** 474 US 52,57-58 (1985).  The first part of the inquiry is whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. id. at 56.  The second prong, the prejudice inquiry, focuses on whether counsel's constitutionally ineffective performance affect- ed the outcome of the plea process. id. at 59.  In other words, to satisfy the "prejudice" prong of **Strickland,** Mr. Sou must show that, but for counsel's errors he would have plead guilty and would not have gone to trial.

Here Mr. Sou meets **Strickland's** first-prong that counsel was ineffective.  In **United States v Blaylock,** 20 F3d 1458,1466 (9th Cir. 1994) the Court held that counsel's "failure to communicate the Government's plea offer to his client constituted unreasonable conduct under prevailing professional standards".  In accord **Turner** 281 F3d at 879.  Also see **United State Ex Rel. Caruso v Zelinsky,** 689 F2d 435,438 (3rd Cir. 1982)("[t]he decision to reject a plea bargain offer... is a decision for the accused to make... a failure of counsel to advice his client of a plea bargain... constitute(s) a gross deviation from accepted professional standards").

The Court:  When is the last time that you spent some time with your client?

4

Mr. Ramsaur:  The day before the pretrial,your Honor.

The Court:  And how long did you spend with him?

Mr. Ramsaur:  I spent an hour and a half, your Honor.
I signed in at 1:30 and I signed out at 3:00 and we discussed two
different things.  Thing number one, which lasted about one half
of an hour, had to do with Mr. Glang's request that a certain--
he wanted stipulations signed, and-- but the bulk of the time was
spent discussing whether or not we could cut a deal.  And what
happened is as soon as I walked out of that jail at 3:00 O'Clock,
I called Mr. Glang, Mr. Glang said no deals.

My client was, wanted to cut a deal, and what he wanted
to take is he would plea guilty if he could get a 10 year mandatory
minimum sentence.

The Court:  Was there a deal offered at some point?

Mr. Ramsaur:  There was much earlier when the first --
it was with the first information, your Honor, and that deal was
basically just plead mandatory minimum 10 years.

The Court:  So what he offered now --

Mr. Ramsaur:  It's practically doubled....

See generally Tr. 13:8-15:6, 10/26/04

Defendant Sou:  [a]nd back to what Mr. Ramsaur said about
10 year mandatory.  When I first met Mr. Ramsaur, two or three months
after that, I told him that I was okay with doing 10 years.  I
would accept 10 years, and I told him I would be content with 10
years.  So if he would have brought that up to my attention, I
would not have turned that down... so if I would have known about
that 10, I would have took it a long time ago.  He did not discuss
it with me.  Mr. Ramsaur probably can recall that I mentioned to him

5

I would be content with 10 years.  Tr. 17:1-22, 10/26/04.

Interestingly during Mr. Sou's colloquy with the Court as to counsel's failure to have apprised him about the 10 year plea offer, counsel never once informed the Court that Mr. Sou's allegations were false.

However, notwithstanding the above, in this instance there seems to be somewhat of a conflict as to this 10 year plea offer. Defense counsel states that this 10 year plea was offered while the Government's Attorney has made a declaration that this plea offer was not made.

In a case counterpoint to Mr. Sou's case, **Williams v. Arn**, 654 F.Supp. 226,233-34 (N.D. Ohio 1986), the prosecutor testified that he made the plea offer and defense counsel denied that any such offer was made.  The Court concluded that it should conduct an evidentiary hearing to enable it to better weigh the credibility of the prosecutor and defense counsel.

Therefore, in this instance, an evidentiary hearing should be held.

Further, although the Government's Attorney has made a declaration that no 10 year plea offer was made, it should be noted that all the other co-defendants to the best of Mr. Sou's knowledge, were given plea offers, or allowed to plea guilty to lesser terms of imprisonment, even those more culpable than Mr. Sou.  For example, Mr. Josue Torres plead guilty to a term of 120 months.  Mr. Torres, just to refresh the Court's memory, according to DEA Agent Hilda Morejon-Rollins, was a major dealer in methamphetamines who dealt in pound quantities of the Ice-type meth. (80% pure), and in kilo quantities of cocaine. Tr. 510:9-511:23, 10/28/04.  In fact, Mr. Torres informed Ms. Rollins that he could also get heroin directly from Mexico.  Tr. 517:3-5,

10/28/04. On September 9, 2002, he sold one pound of meth. to two DEA informants, on September 16, 2002, he sold these informants one-healf pound of Ice-type meth. which he informed these informants, was the last of a 70 pound shipment he had possessed, and on September 19, 2002, he sold these informants an additional one-half pound of the Ice-type meth.

Further, the individual allged to be one of the links to the airplane pilot was allowed to plea guilty and received a sentence of 84 months of imprisonment, and Trinidad Martinez alleged to be Sou's meth. supplier plead guilty and received a sentence of 48 months. Also, Mr. Sou's co-defendant at trial, Mr. Bang Hai Khong, was offered a plea offer of 10 years in exchange for his pleading guilty.

## CONCLUSION

Here, Mr. Sou has met the first-prong of the **Strickland** test that his counsel was ineffective because he failed to inform him of the 10 year plea offer. And he has met the second prong of **Strickland** because had counsel informed him of the 10 year plea offer, he would have plead guilty and not gone to trial.

The unduly prejudice Mr. Sou suffered from counsel Ramsaur's negligence was extremely detrimental. For this reason and the factors set forth and addressed herein, Mr. Sou respectfully requests this Honorable Court to vacate Mr. Sou's convictions and to be allowed to accept the Government's offer prior to the return of the superseding indictment.

## GROUND TWO

BY INSUFFICIENTLY COMMUNICATING THE GOVERNMENT'S PLEA OFFER,
COUNSEL DEPRIVED PETITIONER OF BOTH THE RIGHT TO MAKE A REASONABLY
INFORMED DECISION ON THE ADVANTAGE OF PLEADING GUILTY AND THE
OPPORTUNITY TO RECEIVE A THREE POINT REDUCTION.

Petitioner gave Counsel Ramsaur advance notification of his
preference to resolve this criminal matter by means of a plea negotia-
tion. Counsel Ramsaur had no interest in engaging in plea negotiations
with the Government. Therefore, he declined to act on behalf of Mr.
Sou's best interest during the plea bargaining process. After the
Government made an offer, with the exception of the three point reduc-
tion, Counsel Ramsaur declined to discuss with Petitioner any specific
terms of the plea offer. Counsel Ramsaur failed to provide Mr. Sou
with the necessary information to make an informative and intelligent
decision on the advantages of pleading guilty in exchange for the three-
point reduction. Counsel failed to conduct a comparative analysis of
the available alternatives and advise Mr. Sou on the basis of his pro-
fessional judgment which alternative appeared to be more favorable.
Counsel permitted the expiration date for accepting the Government
plea offer to elapse without any further communication with Mr. Sou or
notifying him of the specified deadline. Counsel's performance in this
respect fell below an objective standard of reasonableness as envisioned
within the meaning of the right to the assistance of counsel.

A criminal defendant is vested with a constitutionally protected
right to the effective assistance of counsel at every stage of the crimi-
nal proceeding where any substantial right may be at issue. See, **Strick-
land v. Washington**, 466 U.S. 668 (1984). In respect to plea negotiations,
it has been judicially determined that the right to the effective asssis-

8

tance of counsel attaches to decisions of vital importance such as whether to accept a plea offer or whether to subject the Government's evidence to the constitutionally requisite standard of proof sufficient to secure a conviction. See, **Turner v. Calderon**, 281 F.3d 851,879 (9th Cir. 2002).

In order to prevail on an asserted claim of ineffective assistance of counsel, a petitioner is required to satisfy the two prone test established in **Strickland** for guidance in the evaluation of such a claim. A petitioner is required to demonstrate that: (1) Counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) there exists a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability has been defined as "a probability sufficient to undermine confidence in the outcome." See, **Riggs v. Fairman**, 399 F.3d 1179 (9th Cir. 2005). In order to sufficiently meet the prejudice requirement when a plea offer is at issue, the defendant must demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, he would not have gone to trial, or conversely speaking, he would not have plead guilty. See, **Hill v. Lockhart**, 474 U.S. 52,59 (1989).

Now, turning to the facts and circumstances pertinent to the case at bar. During the initial stages of this criminal proceeding, Mr. Sou explicitly expressed to Counsel Ramsaur a preference to plead guilty in exchange for a reasonable sentence. Mr. Sou indicated his contentment with 10 years, but only as a desirable sentence that was open for negotiation. Subsequently, counsel communicated to Mr. Sou in a very brief manner that the Government was offering a three-point reduction in exchange for pleading guilty. Counsel did not discuss any

of the specific terms of the Government's plea offer or Mr. Sou's
sentence exposure.  In all actuality, the Government's plea offer was
communicated by Counsel Ramsaur in an insufficient manner.  See, **United
States v. Rivera-Sanchez**, 222 F.3d 1057,1060-61 (9th Cir. 2000)("The
court must decide whether counsel communicated the plea offer insuffi-
ciently under pervailing professional standard that he provided ineffec-
tive assistance to defendant.")  Counsel indicated to Mr. Sou that he
had not determined the base offense level on account of the complex
method involved in calculating the total quantity of "Ice" and determi-
ning within a reliable degree of accuracy the amount to be attributed
to a particular conspirator charged in conspiracy drug case.  Without
this information counsel could not advise Mr. Sou on the basis of his
professional judgment the advantage between accepting the Government's
plea offer and the consequences of proceeding to trial in the event
that  a plea agreement could not be consummated.  During each subsequent
discussion with Counsel Ramsaur, Mr. Sou inquired whether his sentence
exposure had been determined and stressed its critical function in the
evaluation of the available alternatives to proceeding to trial.   Counsel
insisted that these things take time and emphasised the need for Mr. Sou
to exercise patience.[1]  Counsel neglected to caution Mr. Sou regarding
a specific deadline set by the Government for accepting its plea offer.
On no occassion did Counsel Ramsaur return with any of the requested
information essential for Mr. Sou to make an informed and intelligent
decision regarding the advantage of accepting the Government's plea offer.

[1]   Shortly thereafter, with the exception of Bang Hai Khong, all co-conspirators
entered into favorable plea agreements with the Government.  Gregory Comick, a
co-conspirator impressed upon Mr. Sou the need to check with counsel Ramsaur on
the plea negotiation and finalize an agreement as soon as possible. In spite of
a dilligent and exhaustive effort on the part of Mr. Sou and various family
members to contact Counsel Ramsaur, he declined to respond.  He eventually

(Continued)

On the first day of September 2004, a superseding indictment was returned against Mr. Sou by a federal grand jury without any notification from counsel that a superseding indictment was being sought and had been returned. Mr. Sou only became aware of this factor upon arriving at the courthouse for purposes of the arraignment. Counsel Ramsaur was not present for the arraignment. A counsel standing in for a co-defendant's counsel also stood in on behalf of Mr. Sou.

After nearly three months of Mr. Sou's unsuccessful efforts to communicate with Counsel Ramsaur concerning the status of the plea negotiations, counsel finally decided to arrange a meeting. During this meeting, Mr. Sou expressed disatisfaction with counsel's trivial effort toward reaching a plea agreement. Mr. Sou questioned counsel ineffectiveness in comparison to the lawyers of co-defendants who had succeeded in negotiating favorable plea agreements for their clients. Counsel had not engaged in any further discussion with the Government concerning its plea offer and as such, had not made any progress toward consummating an agreement. Mr. Sou insisted that counsel consult with the Government concerning the possibility of a favorable agreement. Counsel agreed to immediately act on Mr. Sou's request. Mr. Sou did not hear from counsel again until being brought to court on the day of jury selection at which time Mr. Sou requested leave to make a motion before the Court for substitute counsel.

Counsel Ramsaur was clearly aware from the initial stages of the criminal proceeding and well in advance of the return of the superseding indictment, that Mr. Sou's preference was to settle this criminal

---

1 (Continuation)
departed on vacation without returning any calls. As a consequence, the Government's plea offer was withdrawn without any communication between Mr. Sou and counsel concerning the deadline or its expiration.

matter through the plea bargaining process. Yet, counsel disregarded Mr. Sou's preference and never engaged his skills as a professional attorney in a meaninful effort toward plea negotiation. As a result, Mr. Sou was deprived of the right of deciding to plead guilty in exchange for a lesser sentence with the effective assistance of counsel. Counsel gross negligence and indifferent attitude concerning the plea negotia- tion was objectively unreasonable under prevailing professional norms. Counsel had a duty to act in compliance with Mr. Sou's decision and employ his skills as a professional attorney in a meaningful effort to obtain a reasonable sentence. As a well settled matter of law, the decision to plead guilty in exchange for a lesser sentence ultimately rest with the defendant. See, **Jones v. Barnes**, 463 U.S. 745,751 (1983). This factor is of particular significance since counsel did not express any opposition to pursuing a resolution through plea negotiation. Nor did counsel advise Mr. Sou that his professional judgment led him to conclude that proceeding to trial would be more favorable. Counsel Ramsaur did not advice Mr. Sou on this matter one way or the other. Yet, the right to the effective assistance of counsel imposes an affir- mative duty upon counsel to advise Mr. Sou on the basis of his profes- ssional judgment whether one available option was more favorable than the other. See, **Anthony G. Amsterdam, Trial Manual 5 for Defense of Criminal Cases** (1988) ("counsel may and must give the client the benefit of counsel's professional advice on this crucial decision."), § 201 at 399, (cited in **Boria v. Keane**, 99 F.3d 492 (2nd Cir. 1996).

At no instance prior to the return of the superseding indictment did counsel Ramsaur provide Mr. Sou with any information from which the base offense level or sentence exposure could be determined. In the absence of any knowledge concerning these factors or the application of

12

the Sentencing Guidelines, it was impossible for Mr. Sou to access the advantage of the three point reduction. At no time did Mr. Sou reject the Government's offer. However, Counsel Ramsaur's failure to compute the base offense level and determine Mr. Sou's sentence exposure precluded Mr. Sou from making an informed and intelligent decision whether to plead guilty. See, **Turner v. Calderon**, 281 F.3d 851,881 (9th Cir. 2002)("Counsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he need to make an intelligent decision.") This information was essential to conducting a meaningful comparative analysis of Mr. Sou's sentence exposure resulting from accepting the plea offer or proceeding to trial. See, **United States v. Day**, 969 F.2d 39,43 (3rd Cir. 1992) ("Knowledge of the comparative sentence exposure between standing trial and accepting a plea will often be crucial to the decision whether to plead guilty."). By virtue of the fact that Counsel Ramsaur had not taken time to compute the base offense level, he was not in a position to offer his professional advice on this crucial matter.[2] The fact that it was counsel's duty to provide Mr. Sou with the necessary information to make an intelligent assessment of the relative advantages of pleading guilty cannot be overemphasized. See, **McMann v. Richardson**, 397 U.S. 759,770 (1970); see also, **Iara v. Sunn**, 800 F.2d 861,865 (9th Cir. 1986).

---

2  On October 26, 2004, during the hearing on Mr. Sou's motion for substitute counsel that was held just moments before jury selection, Counsel Ramsaur had not computed Mr. Sou's sentence exposure. This was at least one year after being appointed as counsel of record. During the hearing, counsel was unable to adequately respond to this Honorable Court's inquiry concerning Mr. Sou's sentence exposure.

Had Counsel Ramsaur sufficiently informed Mr. Sou in respect to his sentence exposure any doubt or uncertainty held by Mr. Sou concerning the benefit of accepting the Government's plea offer would have been completely dispelled. Had counsel handled the plea negotiation in a manner expected of competent defense attorneys, there is a reasonable probability that Mr. Sou would have plead guilty and received the bene- fit of a three point reduction for acceptance of responsibility.

Although counsel claimed that Mr. Sou was made aware that when the time came for the Government to initiate trial preparations the plea offer would be withdrawn. Counsel is equally aware of the fact that he failed to notify Mr. Sou that the time for the Government to initiate trial preparation had come. In response to counsel's claim, Mr. Sou must emphasize that it is a normal practice during plea nego- tiations for criminal defendants to hold out from pleading guilty until the eleventh hour in anticipation of a more favorable offer from the Government. As an experienced criminal defense attorney, Counsel Ramsaur cannot deny being well familiar with this practice. Even after being cautioned by the Government that the deadline was at hand, counsel sat idle and did nothing at all to facilitate the consummation of the plea agreement. See (Exhibit A Hearing on Motion for Subst. Counsel at 14). Moreover, counsel failed to consult with Mr. Sou concerning the recent notification given by the Government alerting counsel to the approaching deadline for accepting its plea offer. It was clearly counsel's duty to communicate with Mr. Sou before the expiration date and to discuss with him the consequences of failing to meet the deadline. The Government's warning constituted a development in the plea negotia- tion that was of vital concern and which Mr. Sou was completely unaware of. See, **Nunes v. Mueller**, 350 F.3d 1045,1053 (9th Cir. 2003)("it is

counsel's dut[y] to consult with the defendant on important decisions and to keep the defendant informed of important decisions and to keep the defendant informed of important developments in the course of the prosecution."). In spite of the degree of urgency imposed by this overriding development in the course of the plea negotiation, counsel allowed the plea offer to expire without any communication between himself and Mr. Sou. Mr. Sou used every means available to him in a diligent effort to communicate with counsel concerning the status of the plea negotiation. Counsel was completely insensitive to the state of urgency interposed by the Government's warning, and thus, simply declined to respond accordingly. Counsel's gross negligence was the sole reason that a plea agreement could not be consummated before the expiration date.

At the time of the expiration date counsel had not yet disclosed nor discussed the specific terms of the Government plea offer with Mr. Sou. The facts and circumstances sufficiently support a finding of gross negligence. On account of counsel's gross negligence, Mr. Sou was deprived of an opportunity to enter into a plea agreement with the Government, was forced to proceed to trial on a superseding indictment that included an additional charge and a substantial enhancement, and denied the three point reduction for doing so.[3]

The facts relevant to the terms of the Government plea offer are in dispute. During the hearing on Mr. Sou's motion for substitute counsel, Counsel Ramsaur stated on record in response to this Honorable

---

3  During the hearing on Mr. Sou's motion for substitute counsel, privileged attorney-client communication was confided in this Honorable Court with the assurance that its confidential content would not be disclosed. This privileged communication was erroneously released to the Government without authorization from this Honorable Court. The Government used this information in developing its trial strategy and quoted from it during the sentencing hearing in order to defeat Mr. Sou's efforts to receive a two-point reduction for acceptance of responsibility.

Court's inquiry, that the Government's plea offer required that Mr. Sou agree to plead guilty to a 10-year mandatory minimum sentence. During the sentencing hearing, the Government described Counsel Ramsaur's account of their discussion as a gross mischaracterization of the nature of the plea negotiation. In order to advance the Government's self-serving interest in the outcome, a declaration was promptly drafted and submitted by the Assistant United States Attorney alleging that the Government's plea offer merely provided for a three point reduction from level 38. However, Mr. Sou calls attention to an Order issued by this Honorable Court on the 23rd day of August of 2007, denying co-defendant Bang Hai Khong's motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. In the Court's Order, a statement from a declaration made by Scott S. Frustman, Khong's trial attorney, was proffered on the issue of the Government's plea offer. In his declaration, Counsel Frustman indicated that the Government's plea offer provided for an offense level of 34. See (Exhibit _B_, Order Denying Def. Khong Mot. Pursuant to § 2255 at 3). Significantly, both Mr. Sou and Khong were charged in the same indictment for the same offense. Both defense counsel have explicitly stated for the record that the Government's plea offer provided for a minimum sentence of 10 years in exchange for pleading guilty. It is to some degree, ironic that under these circumstances the Government would require one defendant to plead to a level 34 and the other defendant to plead to level 38. Nevertheless, it does indicate the existence of a factual dispute critical to the proper resolution of Mr. Sou's claim of error. Therefore, Mr. Sou is hereby requesting an evidentiary hearing to resolve the dispute over the specific terms of the Government's plea offer.

The Government has indicated in its declaration that a plea

offer was made available after the return of the superseding indictment. Counsel Ramsaur failed to communicate this plea offer to Mr. Sou as well. It was not until the Government submitted its declaration that Mr. Sou became aware of this plea offer. The Government's declaration was drafted for purposes of the sentencing hearing in response to Mr. Sou's motion for a reduction for acceptance of responsibility. Counsel Ramsaur's failure to communicate to Mr. Sou the Government's plea offer as it relates to the superseding indictment equally constituted ineffective assistance of counsel. See, **United States v. Blaylock**, supra, ("Attorney's failure to communicate Government's plea offer to his client constitutes unreasonable conduct under prevailing professional standards.")

It is a reasonable presumption that the Government had drafted its plea deals, as it pertain to the original and superseding indictments; so as to offer a lesser sentence than Mr. Sou would have received if convicted after electing to proceed to trial. This is because the Government's commitment to the observance of established ethical standards in the course of its prosecution is accorded highly deferential treatment by the Courts. Thus, the Courts engage in a strong presumption that the Government will tailor its plea offer within acceptable standards of fairness. See, **United States v. Blaylock**, at 1467 n.3, ("The De La Fuente Court held that if it were true that the government plea offer did not give the defendant any benefit that he could not have obtained on his own, it would decline to acknowledge and reward such conduct in light of the standard of fair dealing we expect from prosecutors.")

If the Government's plea offer did in fact require Mr. Sou to plead guilty to a level 38 as the Government declared under the penalty

17

of perjury, Mr. Sou could have indeed obtained the same benefit on his own. Thus, in accord with the opinion of the De La Fuente Court, this Honorable Court should decline to reward such conduct on the part of the Government.

Mr. Sou further contends that the accumulative consequences resulting from counsel's multiple errors in respect to the plea nego- tiation should be considered in light of its prevasive effect on the overall fairness of the proceeding. When viewed in this context, coun- sel's unprofessional performance was so offensive to the constitutional dictates of the right to the effective assistance of counsel as to render the proceedings fundamentally unfair.

The District Courts are vested with broad discretion in fashioning out a remedy that is appropriately tailored to proportionately redress the injury suffered. The well established principles of stare decisis dictate that "the Government bear the risk of constitutionally deficient assistance of counsel." See, **United States v. Blaylock** at 1469.  In light of the facts and circumstances set forth herein, the appropriate remedy would be to allow Mr. Sou to plead guilty in accord with the Government plea offer as it relates to the offense conduct as charged in the original indictment.

## GROUND THREE

### COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ADVISE HIS CLIENT TO PLEA GUILTY.

## SUMMARY OF THE ISSUE

When counsel was first informed of the 10 year plea offer, it was incumbent upon him to immediately inform Mr. Sou of the offer and advise him of the advantage of the offer and its significance.

## ARGUMENT

In Mr. Sou's case there was a slew of evidence to overcome in order to place reasonable doubt in the minds of the jurors. For instance, testimony from DEA agents, consensual incriminating recordings, wiretaps and visual observations. In short, the government had an ironclad case and the defendant had almost no defense he could put forth to prevail leastwise as to the conspiracy count. Hence, once counsel was aware of the 10 year plea offer (an offer Mr. Sou informed counsel he would accept) counsel had a duty to inform him of this offer immediately and if there was any resistance on Mr. Sou's part to discuss with him the advisability of accepting the offered plea bargain.

If it is ineffective assistance to fail to inform a client of a plea bargain, it is equally ineffective to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest. **United States v. Leonti**, 326 F.3d 1111,1117 (9th Cir. 2003), also see **Boria v. Keane**, 99 F.3d 492,497 (2nd Cir. 1996)(examining counsel's failure to advise client of wisdom of accepting a plea.).

19

## CONCLUSION

Mr. Sou has met both prongs of the **Strickland** test, prong one, counsel was ineffective for failing to inform his client to plea guilty to the 10 year offer, although as mentioned, Mr. Sou had previously informed counsel he would accept such an offer. And prong two, Mr. Sou suffered prejudice because had he been allowed to plea guilty he would have received a lesser sentence.

Therefore, Mr. Sou respectfully requests for this Honorable Court to vacate the convictions and the opportunity to renew pre-trial bargaining at the pre-error stage.

## GROUND FOUR

COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY INVESTIGATE THE RELEVANT SENTENCING LAWS.

## SUMMARY OF THE ISSUE

Counsel was unable to inform his client of the approximate sentence he was facing if he elected to go to trial and lost.

## ARGUMENT

Because sentencing guidelines have become a critical and in many cases a dominant facet of federal criminal proceedings, familiarity with the structure and basic content of the guidelines has become a necessity for counsel who seek to give effective representation. **United States v. Day,** 969 F.2d 39,43 (3rd Cir. 1992), in accord with **Riggs v. Fairman,** 178 F.Supp.2d 1141,1147 (C.D. Cal. 2001) aff. 399 F.3d 1179 (9th Cir. 2005). Also see, **Von Moltke v. Gillies,**

20

332 U.S. 708,721 (1948) ("prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved...") in accord, **Lambert v. Blodgett**, 248 F.Supp.2d 988,1001 (E.D. Wash. 2003).

In this instance, Mr. Sou informed the Court that counsel never informed him of his sentencing exposure.

Defendant Sou:  [a]nd like you know, the only thing...I was told about -- like he tells me, he told me that they offered the prosecutor, Mr. Glang, offered three points down for acceptance of responsibility.

But I never knew where my points are, where I'm at or what category. I have no way of figuring that out.

And so how am I suppose to actually take into consideration, you know, what's three points and what's -- I don't even understand... Tr. 6:14-25, 10/26/04.

In fact, anytime Mr. Sou would ask counsel as to how much time he was facing, counsel would inform him that he could not say because the sentencing issue was too complex. In actuality, counsel admitted his inability to comprehend this issue himself.

The Court:  Have you gone over with him the guideline calculations with respect to the charges?

Mr. Ramsaur:  I certainly did with Mr. Glang's one your Honor.  He wanted to know what the guideline calculations were after that happened.  I've talked to Mr. Glang on a number of occassions. In fact, the morning of the pre-trial we had here, I had indicated to the court that the afternoon before, I'd asked Mr. Glang if there were any offers at all, and I was informed by Mr. Glang that it is plead as charged, and that was -- rough calculations I think some of it is de-

pendent upon the weight, and one of the things that's happening in
my clinet's case is that there is a conspiracy charged, and most of
the weight activity is before he entered into the conspiracy. Tr. 11:
2-19, 10/26/04.

Here Attorney Ramsaur was counsel of record at least by Septem-
ber 26, 2003, and the pre-trial conference in question took place
almost a year later on October 26, 2004, and counsel states he "thinks"
his client's sentence is dependent on the drug weight. This late rea-
lization on counsel's part as to the relationship to the drug weight
and sentence exposure is a clear indicator of counsel's failure to
know the relevant sentencing laws, and an indicator of his woefully
ineffectiveness during the plea stage of the proceedings. Because if
counsel did not know the sentencing  exposure his client was facing
a year into the matter, how could he possibly inform his client whether
or not a plea offer is reasonable? Therefore, it is no wonder he did
not pounce on the plea offer when it was first offered, he simply did
not grasp its significance.

The Court:  And when did Mr. Glang withdraw the offer?

Mr. Ramsaur:  About three or four months ago judge, about
the time that -- there was  a time when he came in and said "I'm going
to have to start working on this case" and it seems to me that that
was about June or July.  Tr. 14:15-21, 10/26/04.

Here, counsel's failure to know the law as to the comparative
sentence exposure between standing trial and accepting a plea offer
was constitutionally deficient. **Williams v. State**, 605 A.2d 103
(1992) (counsel's conduct was constitutionally deficient in failing
to advice petitioner of mandatory 25-year sentence upon conviction
at trial when offer to plead guilty to lesser offense involved only

22

to 10-year sentence) and, **Commonwealth v. Napper**, 385 A.2d 521 (1978) (counsel ineffective in giving no advice about desirability of plea offer with three-year maximum sentence when trial risked ten to forty years and defendant's chances of acquittal were slim.)

CONCLUSION

Accordingly, the first **Strickland** prong has been met because counsel's failure to adequately investigate the relevant sentencing laws was woefully deficient and the second prong has been met because due to this deficient performance during the plea stage of the proceedings, Mr. Sou suffered prejudice, as had he entered a plead of guilty, his sentence would have been less.

For this reason, and the factors set forth and adressed herein, Mr. Sou respectfully request for this Honorable Court to vacate the convictions and the return of Mr. Sou to the pre-error stage.

REQUEST FOR EVIDENTIARY HEARING

Mr. Sou respectfully requests the Court hold an evidentiary hearing in this matter to allow him to prove the truth of his allegations.

In deciding whether a petitioner is entitled to an evidentiary hearing on his claim, the district court should determine whether accepting the petitioner's factual allegations as true could he prevail on an ineffective assistance assistance claim, **Blaylock**, 20 F.3d at 1465. Also see, **United States v. Expinoza**, 866 F.2d 1067, 1069 (9th Cir. 1988), and **United States v. Burrows**, 872 F.2d 915,917 (9th Cir. 1989).

23

Accordingly, because if the Court determines that Mr. Sou's allegations are true, he would prevail on his claims of ineffective assistance of counsel, an evidentiary hearing should be held.

## REQUEST FOR APPOINTMENT OF COUNSEL

At sentencing, the Honorable Ronald M. Whyte, United States District Judge, requested the "...NEW COUNSEL BE APPOINTED FOR MR. SOU  FOR APPEAL AND CONSIDERATION OF A 2255 MOTION." **United States v. Sou**, No. CR-03-20110(RMW) (N.D. Cal. Oct. 24, 2005)(Reporter's Transcript of sentencing at pages 31-32, line 25; 1-3(emphasis added)) (exhibit (C) ). Petitioner respectfully requests the appointment of counsel to assist with this 2255 process because of this statement, as well as due to the complexity of the matter.

Wherefore, Petitioner, THIN EDWARD SOU, respectfully requests that this Honorable Court give full consideration to all the issues addressed herein, and grant the remedy that this Honorable Court deems to be appropriate.


Dated: this /8 day of June, 2008.

by

Thin Edward Sou
Reg. No. 99976-111
F.C.I. ELKTON
P.O. BOX 10
Lisbon, OH 44432

24

## CERTIFICATE OF SERVICE

I, the Petitioner, THIN EDWARD SOU, hereby certify that service of a true and complete copy of the foregoing application for motion to vacate, set aside, or correct a sentence has been mailed on this 19th day of June, 2008, upon the opposing party by placing a copy in the prison mailbox at F.C.I. Elkton and addressed to:

cc:    Mr. John N. Glang
       Assistant United States Attorney
       150 Almaden Boulevard
       Suite 900
       San Jose, CA 95113

by _____
Thin Edward Sou
Reg. No. 99976-111
F.C.I. ELKTON
P.O. BOX 10
Lisbon, OH 44432

25

# APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE  NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE  DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |
| | : | Case No. 03CR20110(RMW) |
| v. | : | Hon. Ronald M. Whyte |
| | : | |
| THIN EDWARD SOU, | : | |
| Petitioner | : | |
| | : | |

AFFIDAVIT IN SUPPORT OF PETITION PURSUANT
TO TITLE 28 U.SC. § 2255 TO VACATE, SET ASIDE
OR CORRECT THE CONVICTION AND INEFFECTIVE
ASSISTANCE OF COUNSEL

I, the affiant, THIN EDWARD SOU, duly sworn state and make known, under the penalty of perjury, that I have firsthand knowledge of the facts contained herein, and that such facts are true and correct to the best of my knowledge and recollection.

1.  I was the defendant in United States v. Thin Edward Sou, 03CR20110(RMW).

2.  I was charged with Count 1, a violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii), Count 2, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), in the Northern District of California, San Jose Division.

3.  On November 18, 2004, I was convicted by a jury on all counts.

1

4.   Shortly after Mr. Ramsaur was appointed counsel of record, I informed him that I wanted to plea guilty in exchange for a lesser sentence.

5.   When Counsel Ramsaur told me about the Government's plea offer for a 3 point reduction during the original indictment counsel never explained to me how it would factor into my overall sentence.

6.   Counsel never explained the operation of the sentencing guideline to me.

7.   When I would ask where I fall within the guideline range and my base offense level, when the Government offered the 3-point reduction for accepting responsibility, his reply would be, "these type of conspiracy case is very complicated and it takes time."

8.   Counsel never communicated the Government's plea offer to me as it relates to the superseding indictment when I inform him of my interest to negotiate a plea bargain.

9.   The AUSA informed Counsel Ramsaur that he would allow me to plead guilty and attempt to cooperate with the Government, and thereby seek a downward departure from adjusted offense level 35, pursuant to U.S.S.G. § 5K1.1, if I was so inclined.  It was not until the Government submitted its declaration that I became aware of this plea offer.

I, the affiant, THIN EDWARD SOU, sign the name below, declare (or certify, verify or state) under penalty of perjury that the foregoing are true to the best of my knowledge and recollection.

2

Dated this 18 day of June, 2008.

by _____

THIN EDWARD SOU
Reg. No. 99976-111
F.C.I. ELKTON
P.O. BOX 10
Lisbon, OH 44432

"AUTHORIZED BY THE ACT OF JULY 27, 1955,
TO ADMINISTER OATHS (18 USC 4004)".

CORRECTIONAL TREATMENT SPECIALIST

6/18/08
DATE

3

1   WHAT HE WANTED TO TAKE IS HE WOULD PLEAD GUILTY IF

2   HE COULD GET A 10 YEAR MANDATORY MINIMUM SENTENCE.

3           THE COURT:  WAS THERE A DEAL OFFERED AT

4   SOME POINT?

5           MR. RAMSAUR:  THERE WAS MUCH EARLIER WHEN

6   THE FIRST -- IT WAS WITH THE FIRST INFORMATION,

7   YOUR HONOR, AND THAT DEAL WAS BASICALLY JUST PLEAD

8   MANDATORY MINIMUM 10 YEARS.

9           THE COURT:  SO WHAT HE WAS OFFERED NOW --

10          MR. RAMSAUR:  IT'S PRACTICALLY DOUBLED

11  WHAT THE -- IT'S A 10 YEAR MANDATORY MINIMUM, AND

12  NOW WITH THE WEIGHT CLAUSES AND THE THIRD COUNT,

13  YOU'RE LOOKING AT SOMETHING CLOSE TO ANYWHERE, 16,

14  18, 20 YEARS DEPENDENT UPON THE WEIGHT.

15          THE COURT:  AND WHEN DID MR. GLANG

16  WITHDRAW THE OFFER?

17          MR. RAMSAUR:  ABOUT THREE OR FOUR MONTHS

18  AGO, JUDGE, ABOUT THE TIME THAT -- THERE WAS A TIME

19  WHEN HE CAME IN AND SAID "I'M GOING TO HAVE TO

20  START WORKING ON THIS CASE," AND IT SEEMS TO ME

21  THAT WAS ABOUT JUNE OR JULY.

22          AND THEN THERE WERE A WHOLE SERIES OF

23  PEOPLE WHO PLED IN THIS COURT, AND THEN THERE WAS A

24  FILING OF THE SECOND INFORMATION, AND THEN HE HAD

25  TO GO DO ALL THE WORK TO GET THE INTERPRETERS AND

                                                      14

1   discussing a possible disposition of the charges filed against Khong, as it did not appear that I could

2   reach a disposition that would be acceptable to Khong and his parents." Furstman Supp. Decl. 2:1-3.

3   Khong felt he was receiving disparate treatment compared to other defendants and questioned why

4   he was being prosecuted. Khong thought the evidence was weak and did not want counsel to

5   discuss his exposure in front of his parents. Khong never indicated a willingness to accept a

6   sentence near what the government was willing to do. Trial counsel further recalled:

7           Sometime before trial while the plea offer was still available, I discussed the
        sentencing ranges with Mr. Khong. Based upon my discussion with him of an
8       offense level of 34, I informed him that if he pled before trial, the minimum sentence
        he could receive without the application of the safety valve was ten years. I also
9       informed him that should he proceed to trial on the amended indictment and be
        convicted he would receive a sentence under the guidelines of 14, 15 or 16 years,
10      based upon my understanding of the guidelines and that the maximum sentence by
        statute was life. I do not recall the exact number of years I told Mr. Khong and my
11      files do not reflect a specific calculation of the sentence under the guidelines.

12  Furstman Decl. 3:12-20.

13          Trial counsel told Khong that he doubted that he would qualify for the safety valve in light of

14  prior convictions for driving with a suspended license.

15          Trial counsel unsuccessfully attempted to negotiate with the government a disposition calling

16  for Khong to plead to a violation of 21 U.S.C. § 843(b) (using a telephone to facilitate a drug

17  transaction) which carries a maximum sentence of 4 year sentence.

18          Trial counsel also spoke to Khong about cooperating and thus possibly getting the

19  government to agree to a downward departure for substantial assistance under U.S.S.G. § 5K1.1.

20  Khong was not interested in cooperating.

21          Khong's mother testified that trial counsel said the charges carried a 10 year minimum and

22  that Khong would not get much more than that if convicted and that he had a 50/50 chance of being

23  acquitted. Counsel did mention to her his unsuccessful attempt to get a disposition based on a

24  telephone count. Mrs. Khong said she would have advised her son to accept a deal like the one

25  offered if she had been advised of what he actually faced.

26          Nanci Clarence, an experienced and highly respected criminal defense lawyer, opined that

27  trial counsel's conduct fell below the standard of care because, among other omissions, he failed to

28  determine whether Khong was eligible for the safety valve, failed to properly advise him of his

EXHIBIT B

1     UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3      SAN JOSE DIVISION

4

5  UNITED STATES OF AMERICA, ) CR-03-20110 RMW
             )
6     PLAINTIFF,  ) SAN JOSE, CALIFORNIA
             )
7      VS.   ) OCTOBER 24, 2005
             )
8  THIN EDWARD SOU,   )  PAGES 1-32
             )
9    DEFENDANT.  )
   _____)

10

11     TRANSCRIPT OF PROCEEDINGS
   BEFORE THE HONORABLE RONALD M. WHYTE
12    UNITED STATES DISTRICT JUDGE

13

14  A P P E A R A N C E S:

15  FOR THE PLAINTIFF:  UNITED STATES ATTORNEY'S OFFICE
           BY:  JOHN N. GLANG
16          150 ALMADEN BOULEVARD
           SUITE 900
17          SAN JOSE, CALIFORNIA  95113

18  FOR THE DEFENDANT:  LAW OFFICES OF ALFREDO M. MORALES
           BY:  ALFREDO M. MORALES
19          336 NORTH SECOND STREET
           SAN JOSE, CALIFORNIA  95112

20

21

22

23

24  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
           CERTIFICATE NUMBER 9595

25

        EXHIBIT (C)     1

1    AFFECT THE CRIMINAL HISTORY SCORE.

2              I WOULD ALSO MAKE CLEAR THAT MR. SOU IS

3    FREE TO APPEAL AND/OR BRING A 2255 MOTION ON THE

4    BASIS OF INADEQUACY OF COUNSEL IF HE DEEMS FIT, AS

5    WELL AS ANY OTHER BASIS HE HAS.

6              IS THERE ANY LEGAL REASON WHY THE

7    SENTENCE AS INDICATED SHOULD NOT BE IMPOSED?

8              MR. MORALES:  NONE THAT I'M AWARE OF.

9              MR. GLANG:  NO, YOUR HONOR.

10             THE COURT:  ALL RIGHT.  THE COURT ORDERS

11   THE SENTENCE AS INDICATED IMPOSED.

12             MR. SOU, YOU HAVE TEN DAYS IN WHICH TO

13   FILE AN APPEAL TO YOUR CONVICTION AND SENTENCE.  IF

14   YOU CAN'T AFFORD TO FILE AN APPEAL, ONE CAN BE

15   FILED ON YOUR BEHALF AT NO COST TO YOU.

16             DO YOU UNDERSTAND THAT?

17             THE DEFENDANT:  YES.

18             THE COURT:  OKAY.  ANYTHING FURTHER?

19             MR. MORALES:  I HAVE A PETITION THAT I

20   SUBMITTED TO THE COURT FOR CONSIDERATION.

21             THE COURT:  ALL RIGHT.  DO YOU HANDLE

22   APPEALS?

23             MR. MORALES:  NO, I DON'T, JUDGE.  THAT'S

24   WHY I'M ASKING TO BE ALLOWED TO WITHDRAW.

25             THE COURT:  ALL RIGHT.  I'LL ALLOW YOU TO

                          EXHIBIT (C)
                                              31

1    WITHDRAW AND ASK THAT NEW COUNSEL BE APPOINTED FOR

2    MR. SOU FOR APPEAL AND CONSIDERATION OF A 2255

3    MOTION.

4            MR. MORALES:  THANK YOU.

5            THE COURT:  ALL RIGHT.  ANYTHING FURTHER?

6            MR. GLANG:  NO, YOUR HONOR.

7            MR. MORALES:  I HAVE AN ORDER PREPARED

8    FOR YOUR SIGNATURE THERE.

9            THE COURT:  YES, I SAW IT.  I'LL FIND IT.

10   I'LL SIGN IT.

11           MR. MORALES:  THANK YOU.

12           (WHEREUPON, THE PROCEEDINGS IN THIS

13   MATTER WERE CONCLUDED.)

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT (C)                              32

FIRST CLASS

Clerk of the District Court for
the Northern District of
California
450 Golden Gate Avenue
San Francisco, CA 94102

ST

NAME Nixxy Gibson
REG. # 00776-000
Federal Correctional Institution Elkton
P. O. BOX 10
Lisbon, OH 44432

7005 1110 0000 0069 1203

